**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TANISHA MATTHEWS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 08-cv-5312 |
| | ) | |
| WALMART, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Wal-Mart Stores, Inc. ("incorrectly named in the caption Wal-Mart, Inc. ("Wal-Mart")) submits this memorandum of law in support of its motion for summary judgment as to all claims in Plaintiff Tanisha Matthews' Second Amended Complaint ("Complaint").

## I. INTRODUCTION AND BACKGROUND

Matthews filed this lawsuit after Wal-Mart Store Manager Ike Farmer ("Farmer") terminated her employment for violating Wal-Mart's Discrimination and Harassment Policy, PD 19). The following facts are undisputed:

Wal-Mart, a retailer with Stores around the country, hired Matthews on July 12, 1996 as an Overnight Stocker at Store # 1256 in Joliet, Illinois. (Defendant's Statement of Material Facts As To Which There Is No Genuine Issue at 1, 5). At the time of her termination, Matthews worked as an Overnight Stocker on the 10:00 p.m. to 7:00 a.m. shift. (*Id.* at 2). During her employment, Matthews was trained with regard to a number of Wal-Mart policies, including policies relating to Diversity & Inclusion, Diversity Awareness, Inappropriate Behavior, Sexual Harassment and the Three Basic Beliefs of Wal-Mart. (*Id.* at 8). Wal-Mart's Discrimination and Harassment Prevention Policy (PD-19) prohibits discrimination and harassment, and Matthews admits that during her employment, she was aware that Wal-Mart had a policy that prohibited

harassment based on an individual's status, such as race, religion and sexual orientation. (*Id.* at 6, 7.)

On September 28, 2005 at approximately 12:00 a.m., a conversation regarding God, hell and homosexuality took place in the break room during the first break of the overnight shift. (*Id.* at 11). Matthews admits that during this conversation, she said that homosexuality is a sin and that sinners go to hell. (*Id.* at 42, 59, 68). After this conversation, an overnight Associate informed Co-Manager Tami Petri ("Petri") that an inappropriate comment regarding homosexuals had been made by Matthews to a gay Associate named Amy M.[1] on the previous shift. (*Id.* at 12). As a result of this conversation, Petri contacted Store Manager Ike Farmer[2] to discuss the allegations that had been brought to her attention. (*Id.* at 13). Farmer instructed Petri to obtain a statement from the Associate to whom the statement had been made, and to find out everyone who witnessed the incident and obtain statements. (*Id.* at 14).

As a result of this instruction, Assistant Manager Dani Watson ("Watson") approached Amy M. and asked her to give a statement regarding the incident with Matthews. (*Id.* at 14). Amy M. prepared a statement dated September 28, 2005 that reads as follows:

> We were all sitting at the lunch tables for our first break and somehow the subject of God got brought up. Tanisha [Matthews] repeatedly told everyone that [G]od doesn't except [sic] Gays. Tanisha said that "[G]od distroyed [sic] BayBalon [sic] [b]ecause they were gay." God "[n]ever intended for Gays to be here." and that "We Gays are going to hell because we're not right in the head." Tanisha out loud and clear basicly [sic] does not except [sic] Gays.

(*Id.* at 15).

---

[1] Pursuant to the Protective Order entered by the Court, the parties have agreed to refer to this Associate by first name and first initial of last name only.

[2] As Store Manager, Farmer had final decision-making authority for the termination of hourly Associates at the Joliet Store at the time of Matthews' termination. (*Id.* at 13).

In her statement, Amy M. also provided a list of co-workers who witnessed the incident. (*Id.* at 15). Wal-Mart management then asked the Associates identified by Amy M. to write a statement so management could determine what follow-up action would be necessary. (*Id.* at 16). Overnight Associates James Jancik, Jeanne Gallion, Christine Gorecki, Carolyn Smith and Kendra Davis substantiated that Matthews said gay people are sinners and are going to Hell. In pertinent part:

- Jancik reported in his statement that Matthews said that "all gay[s] are not right with God and the[y] will "Burn in Hell."

- Gallion reported in her statement that Matthews said that "gay people will go to hell [and that] God would punish them for their sins." Gallion also reported that she asked Matthews if there was a passage in the Bible that said "Judge not lest you be judged" and told Matthews that she did not believe that gays go to hell.

- Gorecki reported in her statement that Matthews was screaming and said she [Matthews] could show them "in the [B]ible were [sic] it's wrong to be gay," that she [Gorecki] was offended (even though she is not gay), and that Matthews had worked at Wal-Mart "long enough to know the policy and know what you can't talk about."

- Smith reported in her statement that she (Smith) said that she didn't "think God hate[s] gays" and that Amy M. later thanked her.

- Davis reported in her statement that God was being discussed in the break room and that someone said you would go to hell if you killed someone, and Matthews (in response to a question from Amy M. to the group) said that she "believed [gays] would go to hell."

(*Id.* at 16-21).[3]

After reviewing the statements and consulting with the Market Human Resources Manager, Store Manager Farmer initiated a Red Book investigation, which is the investigatory

---

[3] It should be noted that the Associate witness statements and the subsequent witness interviews are not presented here to prove the truth of Matthews' statement. Rather, the statements and interview notes are included to show the investigation undertaken by Wal-Mart and the basis for Wal-Mart management's conclusion that Matthews had violated company policy. Matthews admitted that she has no idea what Farmer concluded from reviewing these statements. (*Id.* at 45, 71).

procedure Wal-Mart has established for investigating complaints of discrimination and harassment in the workplace. (*Id.* at 22).

On October 6, 2005, Farmer (who typically worked days) interviewed Overnight Associate Amy M. regarding the incident that occurred on September 28, 2005. (*Id.* at 23). Amy M. told Farmer that during a break room conversation Matthews "looked at me and got on [the] subject of gays," said that "[G]ot [sic] doesn't except [sic] gays and gays are going to go to hell" and that "God didn't mean for gay[s] to be on earth." (*Id.* at 24). Amy M. also told Farmer that Matthews was "screaming over her" and said that "gays are not excepted [sic] because God destroyed a city" and that gays should "get their mind right." (*Id.* at 24). When Farmer asked Amy M. about the reaction of the other people in the break room, Amy M. said that others told Matthews that "God will let her be who she is." (*Id.* at 25). Amy M. did not report that any other Associate made a derogatory comment about gays. (*Id.* at 26).

Pursuant to Wal-Mart's Red Book investigation procedures, Farmer asked Amy M. to complete an Associate Statement. According to Amy M.'s statement, Matthews said that "God distroyed [sic] the city in the [B]ible because there was gays there," that "[G]od NEVER ment [sic] for there to be same sex relationships on his planet," that "Gays are going to hell" and that Amy M. might have a "chance at [H]eaven if [she] get[s] [her] mind right." (*Id.* at 27). Amy M. also reported in her statement that Matthews "started getting loud when people were siding with [her]" and that Matthews kept saying "Gays were NEVER ment [sic] to be here." (*Id.* at 27).

Because Farmer was covering another Wal-Mart Store at the time of the investigation, Co-Manager Tami Petri interviewed the witnesses to the incident that led to Matthews' termination (including Matthews). (*Id.* at 29). On October 12, 2005, Petri (who also typically worked days) interviewed overnight stocker Jeanne Gallion about the incident in the break room,

with Assistant Manager Dani Watson present as the witnessing manager. (*Id.* at 29, 30). According to the interview notes, Gallion reported that Matthews said that being gay is "wrong," that "gay people would go to hell," and that it "says in the [B]ible that [gays] would go to hell and it is wrong." (*Id.* at 31). The Associate Statement Gallion provided pursuant to the Red Book investigation is consistent with the notes: Gallion reported in her statement that Matthews said that "gay people were sinners [and] would go to hell." Gallion also reported that she told Matthews that the same God who created her created gay people, and that they would not go to hell for being gay. (*Id.* at 32).

Petri interviewed overnight Associate Christine Gorecki on October 19, 2005, during which time Watson again served as the witnessing manager. (*Id.* at 33). According to the interview notes taken by Petri and Watson, Gorecki stated that she heard Matthews say that "God destroyed Babylon because of the gay relationships, and that everyone in gay relationships are going to hell and there is no way around it." (*Id.* at 34). The notes also state that Gorecki saw Matthews slamming her hands on the table and gesturing angrily. (*Id.* at 34). Gorecki's Associate statement is consistent with the interview notes. According to Gorceki's statement, Matthews said that "your [sic] going to hell if your [sic] gay anyone living that lifestyle – and that God destroyed a whole city because of the same thing … [Matthews] was screaming pounding on the table." (*Id.* at 35). Also on October 19, 2005, Petri interviewed overnight Associate Jim Jancik regarding the incident. (*Id.* at 36). Jancik reported that people were discussing religion and gays and that "Tanisha said all gays will burn in hell." (*Id.* at 36).

Overnight Associate Carolyn Smith, who also was interviewed on October 19, 2005, reported that Matthews said that Amy M. could change and did not have to be gay. [4] (*Id*. At 37). Overnight Associate Tyrone Caradine[5] ("Caradine") was interviewed by Petri on December 12, 2005. (*Id.* at 38). Caradine reported that Amy M. came to the smoking room and told him that Matthews said she (Amy M.) was going to hell because she was gay. (*Id.* at 38).

Also on December 12, 2005, Matthews was interviewed by Petri regarding the incident, with Roberto Sandoval present as the witnessing manager. (*Id.* at 39). According to Petri's and Sandoval's interview notes, Matthews stated that Amy M. asked if God accepted gays and Matthews told her God accepts everybody but doesn't like gay life styles and that she could show her in the Bible. (*Id.* at 40). The notes also state that Matthews said Smith said that God makes you gay and that Matthews stated "that is not what I was taught – you need to repent for your sins that is why Jesus died on a cross for us." (*Id.* at 40). In her notes, Petri also wrote that Matthews had said that a girl at her church had been gay and got herself together – and that when Petri asked what Matthews meant when she said the girl "got herself together," Matthews responded "we had her joined [sic] the church and she chose not to be gay. God did not want her to be that way – the power of God made her change." (*Id.* at 40).

---

[4] Smith also reported that Overnight Associate Donna Branson said that God hates gays. (*Id.* at 37). That comment was not substantiated, and even Matthews does not claim that any other Associate made such a comment about gays. (*Id.* at 69).

[5] The investigation was delayed during this time period for several reasons. (*Id.* at 47). Significantly, there were attendance issues with the overnight Associates which made it difficult for Petri to complete interviews – since Petri typically worked days, if an Associate did not show up for work (and for the scheduled interview), Petri had to readjust her schedule to accommodate a new interview date. (*Id.* at 47). Moreover, November is a blackout period for Wal-Mart, during which time significant resources are required to handle the inventory (which is nearly doubled) for Black Friday -- thus, when Associates called in to work, it made it even more difficult to reschedule the interviews. (*Id.* at 47). It should be further noted that Farmer was working at another store during this time period (and the store was short one co-manager) and thus, Petri was performing the work slated for three managers. (*Id.* at 47). As management found it imperative to conduct a thorough investigation of the allegations, the time necessary to complete the investigation was delayed. (*Id.* at 47).

Matthews submitted an Associate Statement on December 12, 2005 in which she stated (among other things) that Amy M. asked if she believed gay people will go to hell and she (Matthews) responded that she "believe[s] that if you don't change you[r] life that you might got [sic] to hell and that God love[s] everyone but he don't [sic] like sinful life styles. That [sic] what my church teaches and that we have people at my church who [sic] gay that go to my church." (*Id.* at 41).

Based on the Associate Statements and other facts gathered during the investigation, Store Manager Farmer concluded that the statements substantiated that Matthews had stated that gay people are sinners and are going to hell. (*Id.* at 48). Farmer consulted with Employment Advisory Service ("EAS") for guidance, and determined that Matthews had engaged in serious harassment, in violation of Wal-Mart's Discrimination and Harassment Policy (PD -19). (*Id.* at 49). As a result of this determination, and because Wal-Mart's Coaching For Improvement Policy includes serious harassment in its non-exhaustive list of examples of conduct that warrants immediate termination (referred to by Wal-Mart as Gross Misconduct), Farmer decided that Matthews should be terminated. (*Id*. at 10, 50).

Petri carried out Farmer's decision on December 26, 2005. (*Id.* at 54). During the exit interview, Petri explained to Matthews that she was being terminated because she told Amy M. that gay people are sinners and are going to hell. (*Id.* at 55). Matthews admits that she made the statement attributed to her[6] and that she does not have any reason to believe that Farmer's basis for deciding to terminate her – that he believed she made a statement to Amy M. that gay people are sinners and are going to hell – is not true. (*Id.* at 53). Matthews also acknowledges that

---

[6] Specifically, Matthews admits that she said (in response to questions) that homosexuality is a choice, that she offered to show the group where, in the Bible, the Bible says gays would go to hell, and that she said that she believed homosexuality is a sin, and that if you're a non-Christian, sinner, you will go to hell. (*Id.* at 42).

based on the Red Book investigation, it appears that Farmer determined that the comment attributed to Matthews was substantiated by the witness statements he reviewed. (*Id.* at 52).

Following her termination, Matthews utilized Wal-Mart's Open Door Policy to contact District Manager J.D. Hacker to dispute the decision. (*Id.* at 58). Matthews admitted to Hacker that she said to Amy M. that homosexuality is a sin and that all sinners go to hell. (*Id.* at 59). Hacker later informed Matthews that he reviewed the testimony and decided to uphold the Store's decision. (*Id.* at 60).

Matthews claims that her employment was terminated because of her race and religion in violation of Title VII.[7] (*Id.* at 61). But she admits no one ever told her that she was being terminated because of her race. (*Id.* at 63). And Famer testified – and Matthews admits – that Farmer (the decisionmaker) was not aware of her religion. (*Id.* at 75) Moreover, the only negative comment about her religion that she attributes to a manager at Wal-Mart was Petri's comment that Matthews should not have told Amy M. that she was going to hell. (*Id.* at 73). Indeed, Matthews acknowledges she expressed her religion at work by sometimes reading the Bible during her break and wearing skirts, and that she never was disciplined for engaging in these activities. (*Id.* at 74).

Matthews acknowledges that she was told her termination resulted from the comment she made to Amy M. that gay people are sinners and are going to hell. (*Id.* at 55). Matthews admits that she made comments that gays are sinners and sinners are going to Hell:

> Q: Did you tell Mr. Hacker during that conversation that you said that homosexuals are sinners, and sinners go to hell?
>
> A: Yes, I did tell him that she asked me – she questioned me did I believe that gays would go to hell, and I had told her –

---

[7] Apparently realizing that she has absolutely **no** evidence to support her race claim, Matthews has indicated that she intends to file a stipulation to dismiss her race discrimination claim.

> and I did tell him that. I said "I told her based upon my
> religious beliefs, yes, we believe that, you know, if you are
> homosexual, that that is a sin and that all sinners, if you is a
> sinner, you will go to hell." I did explain that to him.

(*Id.* at 68). Matthews also admits that no one else stated that gays are sinners and are going to

hell during the conversation, and that she is not aware of any other Associate who made a

comment about someone's status, homosexuality or race, who was not terminated. (*Id.* at 69,

77).

Despite these undisputed facts, as to which there is no genuine issue, Matthews claims

that her employment was terminated because of her race and her religion in violation of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Wal-Mart

has moved for summary judgment on each of these claims.

## II. ARGUMENT

**A.      Summary Judgment Standard.**

Summary Judgment is appropriate when the moving papers and affidavits show "that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hobbs v. City of Chicago,* 573 F.3d 454, 460 (7th Cir. 2009).

Plaintiff, as the party opposing summary judgment, "bears the burden of coming forward with

properly supported arguments or evidence to show the existence of a genuine issue of material

fact." *Treadwell v. Office of the Ill. Sec. of State*, 455 F.3d 778, 781 (7th Cir. 2006) (citations

omitted).

**B.      Applicable Legal Standard in Title VII Discrimination Cases.**

"A plaintiff in an employment discrimination action may prove discrimination either

through direct evidence or indirect evidence, using the *McDonnell-Douglas Corp. v. Green*

burden-shifting approach." *Markel v. Bd. of Regents of the Univ. of Wisconsin Sys.,* 276 F.3d 906, 910 (7th Cir. 2002) (citations omitted). Regardless of whether Matthews proceeds using the direct or indirect method, Matthews must ultimately prove that Wal-Mart intentionally discriminated against her because of her race and religion. *See Hong v. Children's Mem. Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993). As an initial matter, with respect to Matthews religious discrimination claim, Farmers testified – and Matthews admits – that Farmer was not aware of Matthews' religion. As such, Farmer could not have intentionally discriminated (directly or indirectly) against Matthews because of her religion. *See Van Koten v. Family Health Management, Inc.,* 955 F.Supp. 898, 901, 904 (N.D. Il. 1997) (knowledge requirement is an essential element of Plaintiff's case in a religious discrimination case).

As set forth more fully below, Wal-Mart is entitled to summary judgment on Matthews' race and religious discrimination claims because she has no direct evidence of discrimination, she cannot establish a *prima facie* case of discrimination under the indirect method, and there is no evidence that Wal-Mart's legitimate, non-discriminatory reason is a pretext for discrimination.

**C.      Matthews Has No Direct Evidence Of Race Or Religious Discrimination.**

Matthews has failed to present any direct evidence of race or religious discrimination. "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Essentially, the direct evidence method requires an admission by the decision-maker that his actions were based on the prohibited animus. *See Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000). Matthews admits that no one ever told her that she was being terminated because of her race, and she

acknowledges that she engaged in religious expression at work by reading her Bible and dressing in a certain manner – actions for which she never received discipline or negative comments from anyone in Wal-Mart management. The only comment that Matthews attributes to her religion during her entire employment with Wal-Mart was Co-Manager Petri's alleged comment that Matthews should not have told her co-worker that she was going to hell. But Petri was not the decisionmaker, and the decisionmaker (Farmer) was not aware of Matthews' religion. This is clearly insufficient to show religious discrimination under the direct evidence test. *See Van Koten,* 955 F.Supp. at 903-04. Thus, Matthews must rely on the indirect method of proof to survive summary judgment on both her race and religious discrimination claims.

**D**.     **Matthews' Claims Fail Because She Has No Indirect Evidence Of Discrimination.**[8]

To establish a race or religion discrimination claim under the indirect *McDonnell-Douglas* burden-shifting approach, a plaintiff must first demonstrate a *prima facie* case. In order to establish a *prima facie* case, the plaintiff must prove she: (1) belongs to a protected class; (2) performed her job according to legitimate performance expectations; (3) suffered an adverse employment action; and (4) was treated less favorably compared to similarly situated employees outside of the protected class. *See Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 364 (7th Cir. 2009) (citations omitted) (race and religion claims under Title VII).

---

[8] A claim for religious discrimination under Title VII can be asserted under either disparate treatment or failure to accommodate. *See Noesen v. Medical Staffing Network, Inc.*, No. 06C071S, 2006 U.S. Dist. LEXIS 36918, at *9-10 (W.D. WI June 1, 2006) (citing *Soria v. Ozinga Bros., Inc.,* 704 F.2d 990, 997-99 (7th Cir. 1983); *see also Novitsky v. Am. Consulting Eng'rs, L.L.C.,* 196 F.3d 699, 701 (7th Cir. 1999); *Chalmers v. Tulon Co. of Richmond,* 101 F.3d 1012, 1017-18 (4th Cir.1996); *Mann v. Frank*, 7 F.3d 1365, 1368-70 (8th Cir.1993). Here, Matthews has asserted only a claim under the disparate treatment theory. To the extent that Matthews should now raise an accommodation claim at this stage of the proceedings, such claim must fail because Matthews has not only failed to exhaust her claims before the EEOC, *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 716 (7th Cir. 2006) (overruled on other grounds); *Novitsky* at 702, but has also failed to plead any accommodation claim in her Second Amended Complaint.

If the plaintiff can establish a *prima facie* case, then the employer must provide a legitimate non-discriminatory reason for its employment action. If the employer makes that showing, the burden shifts back to the plaintiff to show that the employer's proffered justification is pretext for discrimination. *See Patterson,* 589 F.3d at 364-65; *see also Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008).

1.    **Matthews Was Not Meeting Wal-Mart's Legitimate Expectations at the Time of her Termination.**

Matthews' race and religion discrimination claims fail under Title VII because she cannot establish that she was meeting Wal-Mart's legitimate expectations at the time of her termination. Wal-Mart has a zero tolerance policy that prohibits discrimination and harassment based on an individuals' status, including race, religion and sexual orientation. Matthews admits that she said to Amy M. (who is homosexual) that gay people are sinners and are going to hell. As such, Matthews cannot show that she was meeting Wal-Mart's legitimate expectations at the time of her termination, and therefore, she cannot establish this element of her *prima facie* case. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006) (explaining that "what matters in a discriminatory discharge case is not the employee's past performance, but whether she was meeting the company's expectations at the time of her discharge.")

2.    **Matthews Also Cannot Establish A Prima Facie Case Because She Cannot Identify a Similarly Situated Associate Who Was Treated More Favorably.**

Matthews' race and religion discrimination claims also fail because she cannot show that she was treated less favorably than a similarly situated Associate who was outside of her protected class. Matthews claims that Wal-Mart discriminated against her on the basis of her race and religion because she was the only employee involved in the conversation (that occurred

on September 28, 2005) who was subsequently terminated as a result of that incident.[9]  This argument fails, however, because Matthews cannot show that any other Associate violated Wal-Mart policy by making comments regarding someone's protected status.

To meet her burden of demonstrating that another employee is similarly situated, a plaintiff must show that there is someone who is directly comparable to her in all material respects, which includes showing that coworkers engaged in comparable rule or policy violations.  *See Patterson,* 589 F.3d at 365-66 (citing *Jordan v. City of Gary Ind.,* 396 F.3d 825, 834 (7th Cir. 2005).   Here, Matthews admits that no one else in the conversation stated that gays are sinners and are going to Hell, and that she is not aware of any other Associate who made a comment about someone's protected status who was not terminated.    Clearly, Matthews has failed to meet the fourth element of her prima facie claim.

### 3.    Wal-Mart Has Set Forth A Legitimate Non-Discriminatory Reason for Terminating Plaintiff's Employment, And There Is No Evidence Of Pretext.

Even if Matthews could establish a *prima facie* claim of discrimination (which she cannot), her claims still fail because Wal-Mart has a legitimate non-discriminatory reason for terminating Matthews' employment, and Matthews cannot establish pretext.

Wal-Mart has a Harassment and Discrimination Policy (PD-19) which prohibits harassment and discrimination in the workplace.   This zero tolerance policy includes any form of discrimination or harassment based on an individual's status, including, *inter alia,* an Associate's sexual orientation.   Here, Wal-Mart conducted a thorough investigation into allegations that Matthews engaged in serious harassment with regard to her co-worker's sexual

---

[9] Matthews also states that she believes she was discriminated against on the basis of her race because her co-worker (who is Caucasian) initiated the conversation on September 28, 2005, but was not terminated. This argument is belied by the fact that this co-worker was terminated only a month after Matthews, albeit for violation of a different Wal-Mart policy.

orientation. Based on the witness interviews and statements provided by co-workers who witnessed the incident, Store Manager Farmer concluded that the allegations made against Matthews were substantiated, that the conduct amounted to serious harassment under Wal-Mart's Discrimination and Harassment Prevention Policy (PD-19), and that Matthews should be terminated for gross misconduct in violation of PD-19. *See Barakat v. Taco Bell, Inc.,* 970 F. Supp. 634, 639 (N.D. Ill. 1997) ("defendant has articulated a legitimate reason why it terminated plaintiff: it believed the statements of [the Complainant]"); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 744 (9th Cir. 2004) (plaintiff's violation of employer's harassment policy is legitimate, non-discriminatory reason for discharge); *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 605 (9th Cir. 2004) ("[plaintiff] was discharged, not because of his religious beliefs, but because he violated the company's harassment policy by attempting to generate a hostile and intolerant work environment"). Because Wal-Mart has articulated a legitimate, non-discriminatory reason for Matthews' termination, Matthews must prove that her termination is pretextual.

To prove that Wal-Mart's reason for her termination is a pretext for unlawful discrimination, Matthews must prove that Wal-Mart's proffered reason is a lie. *See Zuno v. Catholic Bishop of Chi.*, No. 06 C 223, 2008 WL 4876934, at *7 (N.D. Ill. Aug. 6, 2008) (explaining that "[i]n order to be pretextual, the proffered reasons must be a lie" and that the Court is "not concerned with whether or not the employer's actions were mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons."). This Matthews cannot do.

As an initial matter, Matthews admits that Store Manager Farmer was not aware of her religion. Absent such knowledge, Farmer could not have intentionally discriminated against Matthews because of her religion. Moreover, Matthews admits that she was aware that Wal-

Mart prohibited harassment based on sexual orientation. Matthews also admits that she does not have personal knowledge about the investigation Wal-Mart conducted, or what Farmer concluded after interviewing Amy M. and reviewing the numerous witness statements. Indeed, Matthews acknowledges that based on the Red Book investigation, Farmer could have determined that the allegations attributed to Matthews had been substantiated by the witness statements he reviewed. Matthews also admits that she does not have any reason to believe that Farmer's basis for deciding to terminate her – that he believed she made a statement to Amy M. that gay people are sinners and are going to hell – is not true. *See Barakat v. Taco Bell, Inc.*, 970 F.Supp. at 639-40 ("the Court's only concern is 'whether the decision was honest, *i.e.,* whether the employer believed the proffered reason for the decision' . . . [w]hether the employer was correct in its conclusion is immaterial.") (citations omitted).

Matthews also admits that the determination as to whether conduct amounts to gross misconduct is in the discretion of the Store Manager, and that an employee can be terminated for gross misconduct. Essentially, Matthews' only argument is that she should have been coached for her conduct rather than terminated. However, this is insufficient to demonstrate pretext. *See Anderson v. Stauffer Chemical Co,* 965 F.2d 397, 403 (7th Cir. 1992) (an employer with a progressive discipline policy is not required to use it); *see also Bodett v. CoxCom, Inc.,* 366 F.3d at 745-46 (employer's decision not to follow discretionary steps that typically precede termination when one of its employees engages in a gross violation of company policy was not evidence of pretext). Since Matthews cannot prove that Wal-Mart's legitimate, non-discriminatory reason for her termination is pretextual, her claims fail and Wal-Mart is entitled to summary judgment on all of Matthews' claims.

### III. <u>CONCLUSION</u>

For the foregoing reasons and the reasons stated in Wal-Mart's Motion for Summary Judgment, Defendant Wal-Mart Stores, Inc. respectfully requests that the Court grant summary judgment in its favor, dismiss Matthews' Second Amended Complaint and all its claims with prejudice, and grant Wal-Mart such other relief as the Court deems appropriate.

DATED:  February 16, 2010    WAL-MART STORES, INC.

            */s/Norma W. Zeitler*
            One of Its Attorneys

Norma W. Zeitler, ARDC #6230589
Bames & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606-2833
(312) 357-1313
(312) 759-5646 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lorne T. Saeks
Cassandra M. Crane
Much Shelist Denenberg Ament & Rubsenstein, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois  60606-1615

*/s/Norma W. Zeitler*