**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TANISHA MATTHEWS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 08-cv-5312 |
| | ) | |
| WALMART, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT WAL-MART STORES, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Wal-Mart Stores, Inc. ("incorrectly named in the caption as Wal-Mart, Inc. ("Wal-Mart")), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submits this Reply in support of its Motion for Summary Judgment as to all claims in Plaintiff Tanisha Matthews' Second Amended Complaint ("Complaint").

**INTRODUCTION AND BACKGROUND**

On February 16, 2010, Wal-Mart filed a Motion for Summary Judgment, Memorandum of Law in Support of Its Motion for Summary Judgment, and a Statement of Material Facts As to Which There Is No Genuine Issue ("Wal-Mart's Statement of Material Facts"). In her response to Wal-Mart's Statement of Material Facts, Plaintiff admits 78 of the 80 facts.[1] Wal-Mart is entitled to summary judgment based on the following undisputed material facts:

Wal-Mart terminated Matthews, an Overnight Stocker at Store # 1256 in Joliet, Illinois on December 26, 2005, following an investigation that revealed Matthews engaged in serious harassment in violation of Wal-Mart's Discrimination and Harassment Policy, PD-19.

---

[1] Matthews denies only (1) that no one else involved in the conversation said gays are sinners (because she claims that another employee said "I believe like you"); and (2) that she made a comment about an individual's *status* (despite her admission that she made a comment that homosexuals are sinners and are going to Hell).

(Plaintiff's Response to Defendant Wal-Mart Stores, Inc.'s Statement of Material Facts As To Which There Is No Genuine Issue ("Plaintiff's Response"), pp. 1, 10-11, ¶¶ 1-2, 48-50, 54).[2]

Wal-Mart began an investigation after receiving a report on September 28, 2005, that Matthews made an inappropriate comment regarding homosexuals on the previous shift to a gay Associate named Amy M. (Plaintiff's Response, pp. 4-5, ¶¶ 12-16, 22). At the instruction of Store Manager Ike Farmer ("Farmer"), Amy M. and other Associates who witnessed the incident were approached and asked to provide statements.[3] (Plaintiff's Response, p. 4, ¶¶ 14, 16). Amy M. reported in her statement that Matthews said (among other things)[4] that "Gays are going to hell because we're not right in the head," and that Matthews "out loud and clear basicly [sic] does not except [sic] Gays. (*Id.*, p. 4, ¶ 15). Overnight Associates James Jancik, Jeanne Gallion, Christine Gorecki, Carolyn Smith and Kendra Davis also provided Associate Statements, which substantiated that Matthews said gay people are sinners and are going to Hell. (*Id.*, pp. 4-5, ¶¶ 16-21).

After reviewing the statements and consulting with the Market Human Resources Manager, Store Manager Farmer initiated a Red Book investigation. (*Id.*, p. 5, ¶ 22). As the first step in the Red Book Investigation, Farmer interviewed Overnight Associate Amy M. on October 6, 2005, regarding the incident that occurred on September 28, 2005. (*Id*, p. 6, ¶ 23).

---

[2] Wal-Mart's Discrimination and Harassment Prevention Policy (PD-19) prohibits discrimination and harassment. It is undisputed that during her employment, Matthews was aware that Wal-Mart had a policy that prohibited harassment based on an individual's status, such as race, religion and sexual orientation. (Plaintiff's Response, pp. 2-3, ¶¶ 6-8).

[3] Amy M. testified that management approached her about the incident and asked her to make a report because "somebody made a report about it before [she] did." (Deposition of Amy M. ("Amy M. Dep."), p. 19:1-10, attached to Defendant's Response to Tanisha Matthews' Statement of Facts ("Defendant's Response") as Exhibit 2).

[4] Rather than repeat herein all of the undisputed facts that led to Matthews' termination, Wal-Mart incorporates herein its Motion for Summary Judgment, Memorandum of Law in Support of Its Motion for Summary Judgment and Wal-Mart's Statement of Material Facts.

During the interview, Amy M. told Farmer that during a break room conversation Matthews "looked at me and got on [the] subject of gays," (and among other things) said that "[G]ot [sic] doesn't except [sic] gays and gays are going to go to hell" and that "God didn't mean for gay[s] to be on earth." (*Id*, p. 6, ¶ 24). Amy M. also told Farmer that Matthews was "screaming over her" and said that "gays are not excepted [sic] because God destroyed a city" and that gays should "get their mind right." (*Id*, p. 6, ¶ 24). When Farmer asked Amy M. about the reaction of the other people in the break room, Amy M. said that others told Matthews that "God will let her be who she is." (*Id.,* p. 6 ¶ 25). Amy M. did not report that any other Associate made a derogatory comment about gays. (*Id.*, p. 6, ¶ 26).

Pursuant to Wal-Mart's Red Book investigation procedures, Farmer asked Amy M. to complete an Associate Statement, which reiterated the information provided to farmer during the interview. (*Id.,* p. 6, ¶ 27). Farmer also discussed the protections afforded by the Red Book investigation with Amy M. -- including the protections against retaliation and further harassment -- and asked Amy M. if she wanted a reassignment or shift change. (Deposition of Farmer ("Farmer Dep."), pp. 133:16-134:18, attached to Defendant's Response as Exhibit 3). Amy M. replied that such accommodations were not necessary because she understood that she could report any further problems to a member of management.[5] (Farmer Dep., pp. 133:16-134:18).

Since Farmer was covering another Wal-Mart Store at the time of the investigation, Co-Manager Tami Petri ("Petri") interviewed the other witnesses to the incident that led to Matthews' termination. (Plaintiff's Response, p. 7, ¶ 29). Indeed, between October 12, 2005 and December 12, 2005, Petri (who typically worked days) interviewed overnight stockers Jeanne Gallion, Christine Gorecki, Jim Jancik, Carolyn Smith and Tyrone Caradine (and

---

[5] The Red Book specifically states that no action should be taken that involuntarily affects the affected Associate's schedule or work location. (Farmer Dep., p. 134:10-11).

obtained Associate Statements) regarding the incident. (*Id.*, pp. 7-8, ¶¶ 30-38). Gallion, Gorecki, Jancik, Smith, and Caradine all reported in their statements that Matthews said that all gays would go to hell, that gays would burn in hell or that they (gays) did not have to be gay.[6] (*Id.*, pp. 7-8, ¶¶ 30-38).

On December 12, 2005, Petri also interviewed Matthews regarding the incident and asked Matthews to complete an Associate Statement. (*Id.*, p. 8, ¶ 39). In her Associate Statement, Matthews stated (among other things) that Amy M. asked if she believed gay people will go to hell and she (Matthews) responded that she "believe[s] that if you don't change you[r] life that you might got [sic] to hell and that God love[s] everyone but he don't [sic] like sinful life styles. That [sic] what my church teaches and that we have people at my church who [sic] gay that go to my church." (*Id.*, p. 9, ¶ 41).

Based on the Associate Statements and other facts gathered during the investigation, Store Manager Farmer concluded that the allegation that Matthews had stated that gay people are sinners and are going to Hell was substantiated, and determined that Matthews had engaged in serious harassment in violation of Wal-Mart's Discrimination and Harassment Policy (PD -19).[7] (Plaintiff's Response p. 10, ¶¶ 48-49). Farmer testified that he did not take into consideration whether Matthews' comment was based on her religious belief since the statement itself constituted serious harassment (because it was directed at an individual's protected status), and

---

[6] It should be noted that the witness interviews and Associate witness statements are not presented here to prove the truth of Matthews' statement. Rather, the statements and interview notes are included to show the investigation undertaken by Wal-Mart and the basis for Wal-Mart management's conclusion that Matthews had violated company policy. Matthews admitted that she has no idea what Farmer concluded from reviewing these statements.

[7] In determining that Matthews' statement constituted serious harassment, Farmer did not take into account how the September 28, 2005 conversation began or if Matthews was asked her belief regarding homosexuality. (Defendant's Response, p. 28, ¶¶ 37, 38).

Wal-Mart has a zero tolerance policy against violating an individual's protected status. (Farmer Dep, pp. 22:18-23:3, 73:15-20, 146:9-12).

As a result of this determination, and because Wal-Mart's Coaching For Improvement Policy includes serious harassment in its non-exhaustive list of examples of conduct that warrants immediate termination (referred to by Wal-Mart as Gross Misconduct), Farmer decided that Matthews should be terminated – a decision carried out by Petri on December 26, 2005. (Plaintiff's Response, p. 11, ¶¶ 50, 54). Following her termination, Matthews utilized Wal-Mart's Open Door Policy to contact District Manager J.D. Hacker to dispute the decision, during which time she admitted that she said to Amy M. that homosexuality is a sin and that all sinners go to Hell. (*Id.*, p. 12, ¶¶ 58-59). Hacker later informed Matthews that he reviewed the testimony and decided to uphold the Store's decision. (*Id.,* p. 12, ¶ 60).

Matthews admitted in her deposition: (1) that she made comments that homosexuals are sinners and that sinners go Hell (*Id.,* pp. 9, 12-14, ¶¶ 42, 59, 68); (2) that based on the Associate Statements and other facts gathered during the investigation, it appears that Farmer determined that the comments attributed to Matthews had been substantiated and that Matthews had stated that gay people are sinners and are going to Hell (*Id.,* p. 11, ¶ 52); (3) that Farmer determined that Matthews had engaged in serious harassment under Wal-Mart's Discrimination and Harassment Policy PD-19 and that Matthews should be terminated for gross misconduct (*Id.*, pp. 10-11, ¶¶ 49-50); (4) that the determination as to whether conduct amounts to gross misconduct is in the discretion of the store manager (*Id.*, p. 11, ¶ 51); and (5) that she does not have any reason to believe that Farmer's basis for deciding to terminate her – that he believed that she made a statement to Amy M. that gay people are sinners and are going to Hell – is not true. (*Id.*, p. 11, ¶ 53).

In her Response to Wal-Mart's Motion for Summary Judgment, Matthews attempts to create issues of fact where none exist by, *inter alia*, mis-citing the record and identifying immaterial facts that fail to prove the essential elements of her claim. Wal-Mart is entitled to summary judgment because Matthews has not presented any evidence that she was terminated because of her religion and has failed to establish her *prima facie* case. For the following reasons, and the reasons discussed in Wal-Mart's Motion for Summary Judgment and corresponding Memorandum of Law, Matthews' claim should be dismissed with prejudice as a matter of law.[8]

## ARGUMENT

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 250. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

---

[8] Matthews voluntarily dismissed her race discrimination claim on February 17, 2010. Moreover, it is now clear that Matthews does not claim that Wal-Mart failed to accommodate her religious beliefs because that claim was not included in the Charge or the Complaint she filed, and because she does not address that claim in her response. *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 716 (7th Cir. 2006). Accordingly, the only claim remaining before the Court is Matthews' claim of religion discrimination in violation of Title VII.

Rule 56 (c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106, S.Ct. 2258, 2552-53, 91 L.Ed.2d 265 (1986). "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Anderson v. Liberty Lobby,* 477 U.S. at 250.

## I.     Matthews Has Failed to State A Claim Under the Direct Method of Proof.

### A.     Matthews Has Failed to Proffer Any Direct Evidence of Religion Discrimination.

A plaintiff proceeding under the direct method of proof must provide evidence -- whether direct or circumstantial -- that " 'points directly' to a discriminatory reason for the employer's action." *Karim v. H&M International Transportation,* No. 08-2332, 2009 WL 3188064 *9 (N.D. Ill. Sept. 30, 2009) (citations omitted). The Seventh Circuit has characterized direct evidence of discrimination as akin to "an admission by an employer or some sort of 'smoking gun' that points to discrimination." *Id.* (citing *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005)). Essentially, the direct evidence method requires an admission by the decision-maker that his actions were based on the prohibited animus. *See Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000).

Here, it appears that Matthews' argument in support of her intentional discrimination claim is that Farmer knew that Matthews is a Christian, and that her comments regarding homosexuality were based in her religious beliefs. However, it is undisputed that Farmer decided to terminate Matthews for gross misconduct based on his determination that Matthews made a harassing comment to another Associate regarding that Associate's protected status.

7

Indeed, Farmer testified that he did not take into consideration whether Matthews' comment was based on her religious belief since the statement itself constituted serious harassment (because it was directed at an individual's protected status), and Wal-Mart has a zero tolerance policy against violating an individual's protected status. Furthermore, it is undisputed that the *only* negative comment that Matthews attributed to her religion during her employment with Wal-Mart was the comment by Petri (who was not the decisionmaker) that Matthews should not have told Amy M. that she was going to Hell. Accordingly, Matthews has not proffered any evidence of discrimination akin to "an admission" by the employer.

    **B.**    **Matthews Has Failed to Provide Circumstantial Evidence of Religion Discrimination.**

Circumstantial evidence of discrimination under the direct method of proof is that which "provides the basis for an inference of intentional discrimination." *See Karim,* 2009 WL 3188064 at * 9. The Seventh Circuit has recognized three categories of circumstantial evidence that can establish intentional discrimination under the direct approach: (1) suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the plaintiff was qualified for, but failed to receive the desired treatment, and that the employer's stated reason for the difference is pretext. *Id.* (citing *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)).

Here, Matthews claims that Amy M's failure to report the harassment, and Wal-Mart's decision not to separate Matthews and Amy M. after the incident, raise a reasonable inference of discrimination. However, not only does the proffered evidence fail to fit into one of the three

recognized categories that can establish intentional discrimination, it also is not supported by the record. It is undisputed that Amy M. prepared a handwritten statement regarding the incident, discussed the incident with management during her interview on October 6, 2005, and submitted an Associate Statement dated October 6, 2005. Moreover, Amy M. explicitly testified that management approached her about the incident because "somebody made a report about it *before* [she] did." It also is undisputed that Amy M. told management that she was personally offended by Matthews' remarks. Thus, the argument that Amy M.'s alleged failure to report the incident somehow raises a reasonable inference of intentional discrimination is disingenuous, and insufficient to defend against a motion for summary judgment. See *Stuart Park Associates, L.P., v. Ameritech Pension Trust*, 846 F.Supp. 701, 712 (N.D. Ill. 1994) ("A Plaintiff cannot defend against a motion for summary judgment by mis-citing the record, or by alleging a fact for which they have been unable to adduce supporting evidence.").

Moreover, Matthews contention that Wal-Mart's "failure to take any measures" or make any effort to separate Matthews and Amy M. is also without merit. Farmer specifically testified that he discussed the protections afforded by the Red Book investigation with Amy M. -- including the protections against retaliation and further harassment -- and asked Amy M. if she wanted a reassignment or shift change; to which Amy M. replied that such accommodations were not necessary because she understood that she could report any further problems to a member of management. Moreover, the Red Book specifically states that no action should be taken that involuntarily affects the affected Associate's schedule or work location. Again, Plaintiff cannot defend against a motion for summary judgment by mis-citing the record. *See Id.*

Finally, Matthews argues that "all protected expression, like protected speech, has the risk of offending those who have differing views" and thus, "[i]f you take Wal-Mart's argument

to its logical extreme, as long as someone is offended by the speech in question (and so long as Wal-Mart can point to the violation of some policy in its lengthy manual), then Wal-Mart has a presumptive right to terminate the offender irrespective of the nature of the speak [sic] in question." Not only does this argument fail to support any claim of intentional discrimination, it is purely nonsensical. Indeed, it suggests that an employee has the right to make any type of comment in the workplace, no matter how offensive or harassing to her co-workers (and regardless of whether such comment involves a person's protected status as Plaintiff's comment did) because it is "protected speech." This argument clearly fails in a Title VII case.

## II. Wal-Mart Is Entitled To Summary Judgment Because Matthews Cannot Establish A Prima Facie Case Under the Indirect Method of Proof.

To establish a *prima facie* case of religion discrimination claim under the indirect *McDonnell-Douglas* burden-shifting approach, the plaintiff must prove she: (1) belongs to a protected class; (2) performed her job according to legitimate performance expectations; (3) suffered an adverse employment action; and (4) was treated less favorably compared to similarly situated employees outside of the protected class. *See Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 364 (7th Cir. 2009) (citations omitted) (religion claims under Title VII).

### A. Matthews Was Not Meeting Wal-Mart's Legitimate Expectations at the Time of her Termination.

As discussed in Defendant's Motion for Summary Judgment, Matthews' religion discrimination claim fails under Title VII because she cannot establish that she was meeting Wal-Mart's legitimate expectations at the time of her termination. Indeed, it is undisputed that during her employment, Matthews was aware that Wal-Mart had a zero tolerance policy that prohibited discrimination and harassment based on an individuals' status, including race, religion and sexual orientation. It is also undisputed that Matthews told Amy M. (who is homosexual)

that gay people are sinners and are going to Hell. *See Patterson v. Sprint/United Mgmt. Co.,* No. 00-5031, 2002 WL 449052, at *3 (N.D. Ill. March 22, 2002) ("Part of an employer's legitimate expectations is also for its employees to adhere to the published employee guidelines and regulations;" plaintiff who admitted making certain comments and was found to have violated harassment policy was not meeting the employer's legitimate employment expectations).

Matthews attempts to defeat summary judgment by emphasizing her job performance prior to the harassing comment. However, Matthews' past performance is insufficient to establish this required element. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006) (explaining that "what matters in a discriminatory discharge case is not the employee's past performance, but whether she was meeting the company's expectations at the time of her discharge."). Matthews also attempts to defeat summary judgment by claiming (without citing to any supporting case law) that "it is a question of material fact whether Matthews' comments violated Wal-Mart's harassment policy." This is simply not true. *See Seifert v. Dominick's Finer Foods,* No. 06-2936, 2008 WL 724104, at * 5 (N.D. Ill. March 17, 2008) (holding that plaintiff was not meeting employer's legitimate expectations at the time he was fired because, following an investigation, it was determined that plaintiff had violated the sexual harassment policy – thus – plaintiff failed to establish a *prima facie* case of, *inter alia,* religion discrimination); *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d at 365 (plaintiff who violated company overtime policy failed to establish that she met legitimate performance expectations element of her *prima facie* religion discrimination claim); *see also Brummett v. Sinclair Broad. Group, Inc.,* 414 F.3d 686, 693 (7th Cir. 2005) (the law is well settled that courts do not sit as

11

super personnel departments, second-guessing an employer's facially legitimate business decision).[9]

Accordingly, Matthews has failed to establish the second element of her *prima facie* case.

**B.** **Matthews Also Cannot Establish A Prima Facie Case Because She Cannot Identify a Similarly Situated Associate Who Was Treated More Favorably.**

Matthews' religion discrimination claim also fails because she cannot show that she was treated less favorably than a similarly situated Associate who was outside of her protected class. In support of her claim, Matthews argues only that "[s]everal fellow overnight stockers similarly situated to Matthews participated in the September 28th Conversation regarding sin and Hell." However, to meet her burden of demonstrating that another employee is similarly situated, a plaintiff must show that there is someone who is directly comparable to her in all material respects, which includes ***showing that coworkers engaged in comparable rule or policy violations***. *See Patterson v. Indiana Newspaper's Inc.,* 589 F.3d at 365-66 (citing *Jordan v. City of Gary Ind.,* 396 F.3d 825, 834 (7th Cir. 2005). Here, Matthews fails to identify another employee who made a substantiated comment regarding an individual's protected status. *See Patterson v. Sprint/United Mgmt. Co.,* 2002 WL 449052, at *3 (holding that plaintiff failed to satisfy the forth element of his *prima facie* case because the other employees identified were not subjects of *complaints* of harassment; "[t]hat no other employees were terminated for their explicit comments or conversations is not probative of discrimination because none of the others were the subject of a complaint.").

Accordingly, Matthews has also failed to meet the fourth element of her prima facie claim.

---

[9] Indeed, under Matthews' theory, every decision to terminate an employee for violation for company policy would be a matter for the jury, leaving no discretion to the employer for enforcement of its own policies.

### III. Wal-Mart Has Set Forth A Legitimate Non-Discriminatory Reason for Terminating Plaintiff's Employment, And There Is No Evidence Of Pretext.

Even if Matthews could establish a *prima facie* claim of discrimination (which she cannot), her claims still fail because Wal-Mart has a legitimate non-discriminatory reason for terminating Matthews' employment, and Matthews cannot establish pretext.

### A. Matthews' Violation of Wal-Mart's Harassment and Discrimination Policy Is A Legitimate, Non-Discriminatory Reason for Her Termination.

Here, Wal-Mart terminated Matthews for violation of the Harassment and Discrimination Policy (PD-19)[10] after conducting a thorough investigation into allegations that Matthews engaged in serious harassment with regard to her co-worker's sexual orientation. Indeed, it is undisputed that Store Manager Farmer determined that the allegations made against Matthews were substantiated based on the witness interviews and statements provided by co-workers who witnessed the incident, and that Matthews' serious harassment warranted termination for gross misconduct under Wal-Mart's Discrimination and Harassment Prevention Policy (PD-19). *See Barakat v. Taco Bell, Inc.,* 970 F. Supp. 634, 639 (N.D. Ill. 1997) ("defendant has articulated a legitimate reason why it terminated plaintiff: it believed the statements of [the Complainant]"); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 744 (9th Cir. 2004) (plaintiff's violation of employer's harassment policy is legitimate, non-discriminatory reason for discharge); *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 605 (9th Cir. 2004) ("[plaintiff] was discharged, not because of his religious beliefs, but because he violated the company's harassment policy by attempting to generate a hostile and intolerant work environment"). Accordingly, since Wal-

---

[10] Wal-Mart's Harassment and Discrimination Policy (PD-19) is a zero tolerance policy that prohibits any form of discrimination or harassment in the workplace based on an individual's protected status, including, *inter alia,* an Associate's sexual orientation. Moreover, pursuant to Wal-Mart's Coaching for Improvement Policy (PD-30), "serious harassment" is listed as one of the non-exhaustive examples of gross misconduct, which warrants immediate termination.

Mart has articulated a legitimate, non-discriminatory reason for Matthews' termination, Matthews must prove that her termination is pretextual.

### B.    Matthews Has Failed to Offer Any Evidence to Show Pretext.

In order to show pretext, a plaintiff must show that the employer's non-discriminatory reason was dishonest and that the employer's true reason was based on a discriminatory intent. *See Stockwell v. City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010).   When (as here) a plaintiff must rely on indirect evidence to meet her burden, she must show that the employer's reason is not credible or factually baseless, and she must provide evidence that supports the inference that the real reason was discriminatory.    *Id.* at 901-02.   Indeed, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.   *Little v. Illinois Dep't of Revenue,* 369 F.3d 1007, 1012 (7th Cir. 2004).   "This is because courts are not "superpersonnel department[s] charged with determining best business practices."   *Stockwell,* 597 F.3d at 902.

Here, Matthews only offered suggestion of pretext is the assertion that Wal-Mart conducted a lengthy investigation and that the investigation lasted through the holiday season (and thus, Matthews was not terminated until after the holiday).   However, it is undisputed that the investigation was delayed due to attendance issues with the overnight Associates (which made it difficult to complete interviews), and limited management personnel in Matthews' store, which required Co-Manager Petri to conduct (almost) the entire investigation by herself during the busy holiday season (because Store Manager Farmer was working in a different store).   Wal-Mart's methods for ensuring a thorough investigation was conducted should not be second-guessed by the Courts.   *See Stockwell,* 597 F.3d at 902; *see also Brummett,* 414 F.3d at 693 ("[t]he law is well settled that courts do not sit as supper personnel departments, second-guessing

14

an employer's facially legitimate business decisions.").

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in Wal-Mart's Motion for Summary Judgment, Defendant Wal-Mart Stores, Inc. respectfully requests that the Court grant summary judgment in its favor, dismiss Matthews' Second Amended Complaint and all its claims with prejudice, and grant Wal-Mart such other relief as the Court deems appropriate.

DATED:  April 19, 2010                                      WAL-MART STORES, INC.

                                                                            */s/Norma W. Zeitler*
                                                                            One of Its Attorneys

Norma W. Zeitler, #6230589
Nicole M. Denow, #231722
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois  60606-2833
(312) 357-1313
(312) 759-5646 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Lorne T. Saeks
        Cassandra M. Crane
        Much Shelist Denenberg Ament & Rubsenstein, P.C.
        191 North Wacker Drive, Suite 1800
        Chicago, Illinois 60606-1615

        */s/Norma W. Zeitler*